Garland, J.
This action is brought to recover from the defendant, who is an attorney and counsellor at law, the sum of f9305 59, which the plaintiff alleges he had to pay improperly *371 and without cause, in consequence of the neglect, mismanagement, and want of skill and attention, on the part of the defendant, whom he had employed to transact his business. The petition contains, at great length, various allegations which go to charge the defendant with the various acts said to have caused the loss and damage.
The answer, after a qualified denial of all the allegations, proceeds by an admission, that the respondent was retained and employed in his professional capacity to advise and direct the plaintiff touching and concerning the administration, liquidation and settlement of the succession ofF. A. Browder, late of the parish of East Baton Rouge, as he was also by the late John Linton, who was the predecessor of the plaintiff in administering the affairs of said succession ; but he avers, that he was not the only legal adviser of Linton and the plaintiff, they having employed others, under whose directions and advice much of the business was conducted, without his sanction or knowledge. He specially denies having withheld from the plaintiff the tableau of distribution alleged to have been filed by him on the 30th of November, 1S37C, or that it was unnecessarily filed ; but alleges, on the contrary, that he did shortly after it was filed forward to him a statement of the same, at which time, if there had been any errors committed by him, the plaintiff had it in his power to correct them. He further avers, that he furnished the late John Linton with the form of a legal tableau of distribution of the estate of Browder, to be- filled up according to the respective rights and privileges of the creditors; but that the plaintiff disregarded said form, and filed accounts and statements, through other counsel, partial, confused, and hard to be understood, paying no regard to the order and rank of the creditors, and without naming many of the ordinary creditors at all. He further avers, that at the time of filing the tableau made by him, it was necessary and proper, as the plaintiff had long been in possession of the funds of the succession of Browder, to the great injury of the creditors, who were threatening to institute suits against the plaintiff for neglect of duty towards them and the succession, and that some of them had commenced proceedings to compel the filing of an account and distribution of the proceeds of the estate. For further an *372 swer he alleges, that if the plaintiff has really sustained any loss in consequence of the homologation of the tableau filed, or from the manner in which the succession has been settled, which damage is denied, it has arisen exclusively from the desire of the plaintiff, in contravention of his duty, to retain and use for his own profit the funds of the succession, and from his inattention and neglect to furnish to respondent the true state of his and the former administrator’s accounts of their administration ; and that if an interest account should be entered into between the plaintiff and the succession, it would be found that, in fact, no loss has been sustained by the homologation of said tableau.
It appears that, in the month of August, 1832, John Linton was appointed administrator of the estate of F. A. Browder, deceased, and that on the same day he filed an account of the receipts and expenditures of the succession; from which it is to be inferred he had been previously appointed, and had been acting. In the preparation, filing and homologation of this account, it does not appear that the defendant had any agency, further than to furnish a statement, (with the vouchers in support of it,) of his acts as counsel or agent, in the part of the country where he resided. In October, 1834, the plaintiff was appointed administrator of the estate, and about the last of March, 1836, he filed, in the Probate Court of East Baton Rouge, what is called a distribution of the estate of Browder, and also an account, the whole of which is rather an account of receipts, payments and expenditures, than a statement of debts and a distribution of funds collected. It includes a number of items, dated previous to the appointment of the plaintiff as administrator, and, therefore, debits and credits which properly belonged to the administration of Linton. This statement, or account, is signed by the plaintiff, and it is not shown what precise connection the defendant had with it. It is not shown that he filed it, or had it homologated, although it appears that he was the only agent, and principal attorney in that part of the State where the proceedings were carried on, and acted as such afterwards. This fact is shown by the correspondence ' of the parties, and by other evidence. On the 18th of November, 1837, the plaintiff writes to the defendant, saying that he had hoped, before that time, to have given some attention to the affairs *373 of Browder’s estate, and to have been with defendant at Baton Rouge, to arrange the additional tableau for which he (defendant,) had the documents. A desire is expressed to hear from defendant on the subject. The plaintiff then says, that one of the creditors was importunate in relation to a certain claim, but that he would prefer having the tableou completed before he paid any more money. Inquiries are then made as to the intentions of the defendant to visit the city, and in relation to the business of the succession. He then says, it would not be perfectly convenient in such times to pay all the money, but a desire is expressed to have every thing arranged, and in order to settle the estate as soon as monetary matters are a little more easy. On the 22d of the same month, the defendant acknowledges the receipt of this letter, and says that he had been called upon sometime before to know when the final tableau would be filed, and had answered that it was made out, but could not be filed until he (defendant,) had consulted with, or heard from the plaintiff. After answering several inquiries that had been made, the defendant adds, that he has been sick, but will be in the city in a few days, and will bring the tableau with him. He recommends that it be filed and homologated at once, to stop the clamor of the creditors, and states that plaintiff can get as much time afterwards as he might wish. There is reason to believe that the defendant came to the city about the time he mentioned, and it is probable that he and the plaintiff had some communication on the subject, but of its precise character the record does not inform us. This tableau purports to be dated in New Orleans on the 1st day of December, 1837, and is signed by the defendant as attorney for the plaintiff; but was filed in the clerk’s office at Baton Rouge on the 30th of November, 1837. On the 15th of December, the plaintiff writes to the defendant, complaining that he had not received a copy of the tableau which was promised to be sent to him. He says, “ 1 feel a good deal in the dark,” and prays that his request maybe heeded. He speaks of having written to the Probate Judge for copies. He says that he does not know how the blanks have been filled, &c. He then proceeds to make inquiries about various matters relating to the collection of debts owing to the estate, and whether any provisions had been made to prevent the creditors from com *374 ing upon him before he has funds, and trusts that proper precautions will be taken. On the 23d of December, 1837, the defendant writes, that he has been so much occupied as not to have time to make out a complete copy of the tableau in question. That only four blanks existed, and he had filled them with various sums. He then proceeds to make a statement of the affairs of the succession, without pretending that it is a copy of the tableau. After answering various inquiries as to collections, he proceeds to say, that he has “ a draft of the tableau,” which he will bring with him when he visits the city, and leave it for examination, if the copy from the Probate Judge should not, in the meantime, be received.. He then states that an opposition has been filed; that it is his intention to go to Baton Rouge ; and that if there be no other opposition, he will have the proceedings homologated. Here the written correspondence between the parties ceased until the 4th of April, 1838. It is not shown that the defendant went to Baton Rouge to attend to the business, at any time previous to the 19th of April 1838, nor does it appear precisely when he came to the city with the draft of his tableau ; but one witness, a clerk of the plaintiff, swears that he heard a conversation between the parties, about the 9th of January, 1838, in which the plaintiff told the defendant that there were errors in the tableau, and that he seemed convinced there were. No one was present at the conversation but the parties to this suit, and the witness. It is further shown, that a second opposition was filed, involving a considerable sum of money; and that the defendant had made an agreement with the counsel who presented it, to go with him, at some period not precisely shown, to try it; but that about the 20th of February, 1838, a privileged creditor, and the gentleman to whom defendant had handed the tableau to have it filed, moved the court to dismiss this opposition, as it was not prosecuted, and had the tableau homologated.
From what has been stated, we are satisfied that the making of the tableau had been a subject of consultation previous to the filing of it in court, and we believe the plaintiff knew it was to be filed previously to the time it was ; but the evidence does not satisfy us that he was fully aware of its contents. From the anxiety shown to get a copy of it, it is quite clear that the plaintiff was *375 as he says, “ in the dark,” and the statement sent instead of a copy, did not fully enlighten him. Unless we believe the witness, Harding, perjured, we are bound to believe that the defendant was informed of there being errors in it early in January. He took no pains to correct them, and seems never to have attended the court at all, to give attention to this business. It was in making up the tableau, and stating the amount that the plaintiff had to distribute among the creditors, that the errors were committed which caused the loss to him. Shortly after the judgment of homologation was rendered, the defendant knew it, but took no steps to ascertain precisely what had been done, or to have the errors he had made corrected.
About the 4th of April, 1838, the plaintiff wrote to the defendant, stating various errors in the tableau, and complaining of his conduct. The defendant some time after replied, justifying himself, denying that there was any error, and adding, if there was, that it was owing to the fault of the plaintiff in not giving correct information, and from not examining the account or tableau, when shown to him. The parties, about the 19th day of April, met at Baton Rouge, when an amended tableau was drawn up, and presented to the Judge, in which the errors of the former were exposed, and a petition was presented to the Probate Judge asking for their correction. This application was rejected, and the decision affirmed by this court. 13 La. 156. The plaintiff shows, that he has paid the money thus erroneously stated to be in his hands, to the creditors of Browder’s succession, and claims to recover it of the party through whose error or neglect he was compelled to do so. The correspondence between the parties, subsequently to the filing of the corrected tableau, is not important, as it consists principally of reproaches on the one side for not paying due attention to the business, and denials of the charge, with references to previous transactions, and explanations relating to them and the business generally.
The parol testimony shows, that the defendant is a lawyer proverbial for his attention to business ; that he is a competent accountant, well versed in the mode of keeping books and often employed in consequence of his knowledge and skill in unravel-ling intricate transactions and accounts. It is also shown, that *376 he stands high as a professional man, a fact admitted by the counsel for the plaintiff in the argument. The accounts filed show, that the defendant has received a large sum for his services, and in one of his letters he mentions that he has in his possession a considerable amount of chirographic claims against the succession, which he will pay off, as soon as he shall receive from the plaintiff a sum exceeding seven thousand dollars. It is also proved, that when the parties met in the Judge’s office at Baton Rouge, the plaintiff charged the defendant with having committed the errors and mistakes, and said that he ought to be liable for them; that defendant expressed his sorrow on account of them, saying that he was not aware of their existence until he was informed by the plaintiff, and that he would endeavor to remedy the matter by filing an application to have the tableau amended.
The case was tried by the court below, and a judgment rendered for the defendant, from which the plaintiff has appealed.
The evidence satisfies us, that the defendant was employed as the principal counsel to manage the affairs of the succession in the country, and that he did so. Much reliance was placed on him by the plaintiff, who is a merchant of New Orleans. He was specially charged to prepare the final tableau of distribution of the funds to be paid out, and was furnished with the documents necessary, or knew where they could be obtained, for the purpose of making it correctly. He did make the tableau in which the errors occurred, without the interference or assistance of any other counsel. It was filed with the knowledge and consent of the plaintiff before he knew much about it, and, under the circumstances, we are compelled to believe the testimony of Harding, as to the plaintiff’s having pointed out the errors to the defendant in January, 1838, which was before the homologation. Besides this, there is no evidence that the defendant ever went to Baton Rouge after he filed the tableau, to give the business any attention, until after it was homologated, a period of nearly three months. It does not appear that he went there at all, until he went in company with the plaintiff, late in April, 1838, although he knew that oppositions had been filed, and that the creditors were, to use his own language, clamorous as to the management of the estate.
*377 Actions of this description are not of frequent occurrence, but whenever they have been instituted, either in this State or elsewhere, the same general rule has prevailed, that lawyers, like all other agents, are responsible for their negligence and want of skill in relation to the business entrusted to their care. The act of the Legislature of 1808, makes them responsible for costs and ■damages in some cases, for absenting themselves from the courts where they have business, without good cause, and for other neglects. B. & C.’s Dig. 21, 22, § 5. The Spanish law made attorneys responsible for fraud or fault. Partida, 3, 5, 26. In the case of Breedlove, &c. v. Turner, 9 Mart. 353, this court held, that an attorney and counsellor at law is liable to his client for the mismanagement of the suit, even though it be without fraud, but not for an error of judgment, unless the error be so gross as tó show the want of competent and ordinary legal acquirements and attention. This principle prevails in the other States of the Union, in England, and in every country where the relation of counsel and client exists. In the 8th volume of the Massachusetts Reports, 57, the court said: “ There is no doubt that for any misfeasance or unreasonable neglect of an attorney, whereby his client suffers a loss, an action may be supported and damages recovered to the amount of that loss.” But this does not mean that every error or mistake is to make an attorney liable. When he acts in good faith, and with ordinary or reasonable skill and knowledge, he will be protected. The court in Massachusetts then proceeded to decide the cause, and on a state of facts not as strong as that presented in this case, held the attorney liable for the debt which was lost. In giving the opinion, the Judge who pronounced it said, he was acquainted with no man in whose faithful and upright conduct and diligent attention he had more confidence than in the defendant’s, and that he had no doubt the error complained of had its foundation in a humane desire to save expense and vexation to the debtor.
The English books contain many cases in which the same principle has been held. In 4 Barnwell & Alderson, 202, (6 Eng. Com. Law Rep. 401,) an attorney 'was held liable, who suffered the case to be called, without previously ascertaining whether a material witness was in court, or could be had *378 during the trial, whereby the plaintiff was nonsuited. In 1 Bingham, 347, (8 Eng. Com. Law Rep. 341,) an attorney who neglected to appear before an arbitrator, whereby his client lost his cause, was held responsible. In another case, an attorney was employed to examine and prepare the titles to an estate, to belaid before counsel for an opinion. He omitted to recite or present two deeds, whereby an opinion was given that would not have been, if those two deeds had been presented. The purchaser had to pay a sum of money in consequence, to make his title good, and it was held the attorney was liable for it. 10 Eng. Com. Law Rep.232. 18 Ibid. 348. In 7 Bingham, 413, (20 Eng.Com. Law Rep. 183,) an attorney who was employed to defend an action, neglected to file his plea, whereby a judgment by default was obtained. It was decided, that the attorney was responsible for the damages, without the plaintiff’s having shown that he had a good defence. In 10 Bingham, 491, (25 Eng. Com. Law Rep. 217, 219,) an attorney allowed his client to execute a covenant which was unusual, without explaining its purport and necessity, in consequence of which he sustained damage, and it was decided that he was responsible. The principle established by the Court of Common Pleas is, that an attorney is bound to take care that his client do not enter into any stipulation or contract, that may expose him to a greater degree of responsibility than is ordinarily attached to the business in hand, without explaining the consequences of it. The cases cited show- how far courts have gone in enforcing the principle of the responsibility of an attorney towards his client. If we consider him in the light of an agent, the law is equally positive and precise. If the duty or obligation be violated, either by exceeding his authority, by positive misconduct, or by negligence or omissions in his proper functions, and damage ensue, the loss or damage will fall on the agent, and he must make a full indemnity.
The defendant rests his defence on four grounds; and has, in this court, filed a plea of prescription of one year.
The first ground is, that Linton, the first administrator of the . estate was furnished by him, (the defendant,) with the form of a legal tableau of distribution, to be filled up, but that he disregarded it, and got other counsel to prepare a statement of the re *379 eeipts and expenditures, about which he was not consulted. This form it is said came into the possession of the plaintiff, who, on filing his first account or tableau in 1836, also disregarded it, and consulted other counsel, whereby great confusion was created, and it became very difficult to ascertain the true condition of the estate ; whereas if his form and advice had been followed, there could not have been any mistake or difficulty. The defendant and his counsel then go into an examination of the facts and accounts, to sustain this position. Admitting all that is said to be true, we do not well see what justification it is of the defendant. It is not attempted to make him responsible for the first or second account, nor is it shown that there is any error in them prejudicial to the plaintiff. Obscure and confused they perhaps are, and had the defendant’s advice and form been followed, it is possible they would have been less so; but of that we can form no opinion, as the original form of the account or tableau is not before us, and the evidence does not tell us what the advice was. It was perhaps in consequence of the obscurity and vagueness of the accounts, that the defendant was selected to make the final distribution and statement. He was reputed to be among the best accountants in the country; had long been cognizant of the affairs of the succession; was proverbial for his attention to business ; and, therefore, supposed, to be above all others best qualified to untangle the difficulties which embarrassed the estate and accounts. The errors complained of in this account are found in its first items. It represents the balance on hand, from the previous accounts, as much larger than it really was ; consequently the plaintiff had to pay it. Had the defendant had those accounts before him, as he should'have had, it is not probable that, with ordinary skill and investigation, he would have made the mistake. The defendant knew that these documents were in existence, where they were, and must also have been aware of their importance in making out a correct statement. He should, if he did not have them, have told the plaintiff that they were necessary; and he should not have filed a tableau without seeing them. It was the omission of the defendant that caused the error, because if he had referred to what had previously *380 taken place, it is not probable that, with ordinary care and vigi-, lance, any mistake would have been made.
The second ground is, that there was no negligence on the part of the defendant as the attorney and counsellor of the plain- ■ tiff, and that he did not disobey any instructions given him, but that, on the contrary all the neglect was on the part of the plaintiff, in not furnishing full and ample statements of the proceeds of the succession, and the amount of claims paid previously, or that were still owing. To the inattention, and want of time on the part of the plaintiff to examine the tableau before it was filed, and to his neglect in failing to examine the copy sent him in December, 1837, the whole difficulty is attributed. To show that the ground is tenable, the defendant, in his oral and written arguments, has gone at great length into the evidence and correspondence, but we think without success. He was at the time, the only counsel of the plaintiff in relation to this business y he had been a principal manager of the estate; and if the plaintiff had not furnished the necessary documents and information, he should not have proceeded until they were procured. It was not correct for the defendant to proceed on insufficient or incorrect data, and thereby commit the plaintiff without letting him know it. But the evidence shows, that the defendant had all the documents for the purpose of making a tableau, and that he strongly advised its being made and filed immediately. In his letter of the 22d of November, he says, that it was already made out, and the counsel of one of the creditors informed of it some time before, although we do not see the plaintiff mentioning it, until his letter of the !Sth of November, 1837. He says further, that he will bring it with him, to show to the plaintiff, in a few days. That he did bring it and show it is more than probable; but it is evident the plaintiff knew very little about it, as, in a short time after, he complains that a promised copy has not been sent, and says, that he is “ in the dark” about it. The substance of the document was sent in the letter of the 23d of December, 1837, and an intimation was given that the defendant would soon be in the city, and communicate further. Harding says,¿that he was in the city about the 9th of January, 1838, and that the plaintiff then pointed out the errors. The attempt to show that this wit *381 ness was mistaken, has no support from anything we can find in the record.
The third ground assumed is, that it was necessary and incumbent on the plaintiff to file a final tableau at the time it was done, because he had the proceeds of the property in his hands, and the creditors were anxious to get their money. Various portions of the evidence are referred to with the view of proving this necessity. We are entirely convinced that it was time a final distribution of the funds should be made. The succession had been opened more than five years, and was still not settled. But admitting the necessity of such a tableau, it does not, in our opinion, authorize or justify the defendant in preparing and filing an erroneous one.
The fourth ground of defence is, that if ah interest account were opened between the plaintiff and the succession, it would appear, that he ought to have accounted for about $> 17,500 more than he did, for interest on the sums in his (plaintiff’s) hands for seven years, which sum it is contended fully indemnifies the plaintiff against the alleged losses. We have not gone into a calculation of the interest said to have accrued, as we cannot see what possible right the defendant has to be benefitted by a demand, which, if it exists at all, is owing-to the creditors or heirs of Browder.
The last ground of defence is the plea of prescription of one year, as the defendant is charged with a quasi-offence, and more than one year has elapsed since the commission of the act which caused the damage. The erroneous tableau was filed on the 30th of November, 1837, and finally homologated on the 27th of February, 1838.' The defendant insists, in one branch of his argument, on the fact, that neither he nor the plaintiff knew of any error until the 4th of April, 1838 ; and on the 19th of the same month proceedings were commenced to correct the error. - That suit was not finally decided until the 25th of March, 1839, and this suit was commenced on the 23d of July following, about which time the money was paid by the plaintiff to the Sheriff, under an execution in favor of the heirs of Browder.; Until this time the damage had not been actually paid ; and until the 25th of March, 1839, the plaintiff did not know whether he would be *382 made actually responsible. Considering the relations existing between the parties and the facts, we do not think the plea can be sustained.
It is, therefore, ordered and decreed, that the judgment of the District Court be annulled and reversed ; and proceeding to give such judgment as in our opinion ought to have been given in the court below, it is ordered, adjudged and decreed, that the plaintiff, William E. Thompson, do recover of the defendant, John L. Lobdell, the sum of nine thousand three hundred and five dollars and fifty-nine cents, with costs in both courts.